v. Michael Criscione & M&T Truck Sales at All, Apple East Mr. Rowden, you may proceed. Thank you, Justice. May it please the Court and good afternoon. On March 14, 2022, the trial court entered a mandatory preliminary injunction indicating that GTS and Tom Sturbys had to supply used trucks to M&T for sale and denied Mr. Sturbys' motion for an appointment of a receiver. The analytical framework with which we view this decision is well settled. Preliminary injunctions are a drastic remedy and disfavored. Mandatory injunctions are viewed with greater scrutiny. In order for the analysis to begin, the move-on has to establish a clearly ascertainable right. The trial court relied on this one-page document called a business plan and held that that constituted an enforceable contract, even though it lacked critical essential terms and is therefore not an enforceable contract and it had no term or termination date and therefore was terminable at will, which occurred on October 21, 2022. The case law is also clear that courts will not supply critical essential terms that are missing in the documents sought to be enforced by the move-on. The case that probably is most helpful for us is the Cheever case, where our Supreme Court evaluated a publication agreement and held that it was not enforceable because it lacked essential terms. Unlike here, in Cheever, there was an actual formal contract that had extensive terms, but the court in viewing it reversed the trial court, reversed the appellate court, which affirmed its enforcement and found and held that there was no length of the book at issue, there was no content of the book at issue specified in the contract, and there was no style or manner of publication and therefore it was unenforceable. Indeed, Cheever said, when any essential term of an agreement is left to future negotiation, there is no binding contract. Here, the trial court relied exclusively on the one-page bullet point business plan that Mr. Sturbys and Mr. Criscione signed some eight months after M&T was formed. In it, it had a series of about 20 bullet points, one of which provided under Tom's responsibilities, quote, providing inventory to M&T to sell, comma, all used trucks that are removed from GTS fleet. Trial court relied on that bullet point and held this document to be an enforceable contract sufficient to justify a mandatory injunction. Now, as we analyze that document to see if it can be found enforceable, what becomes exceptionally clear is, number one, the document has no duration, no term whatsoever specified. Number two, it has no quantity of trucks or inventory that Mr. Sturbys or GTS are to supply. Interestingly, these are motor vehicles, it says nothing about how the transfer of title of this as between Mr. Sturbys or GTS and M&T. Perhaps most damningly for Mr. Criscione is there is no information whatsoever on the price of these trucks. Document says nothing about how M&T is to pay Mr. Sturbys or GTS for these, how it's to sell or finance those to any end purchasers, and how the flow of funds is to be accounted for. In addition, it also has says nothing about the manner or timing of delivery of these trucks. What we know from case authority, which my opponent doesn't contest, is that price is an essential term to a contract. This document has none of those essential terms and therefore cannot possibly constitute the enforceable contract forming the basis of a clearly ascertainable right. Mr. Criscione has talked about some things, his arguments kind of vary between calling this a business plan, calling it a supply contract or agreement. None of that helps because none of the cases that they cite and discuss somehow supplant or cause us to disregard the express holding of Cheever that says you can't supply these missing terms by calling some one thing another thing or by referring to what the parties may have done in the past or past conduct. And therefore, there simply is no appropriate basis on which to hold and find that there was a clearly ascertainable right. Underpinned by this this business plan. Moreover, even if the court were to hold that this is somehow an enforceable contract, case law is equally clear and specifically the Jesperson case that that a contract that has no term is terminable at will by the parties. The again, the record is absolutely clear and unequivocal that on October 2021, Mr. Sturbey sent a notice of termination to Mr. Criscione and Mr. Criscione acknowledged receipt of that termination. And therefore, to the extent there ever was binding obligations that were subject of this business plan, those obligations ceased on October 2021. And therefore, for that additional reason, this cannot constitute the basis of a clearly ascertainable right. Again, my opponent tries to argue this shareholder agreement suggestion without any case law or case analysis that indicates why to the extent it was a shareholder agreement, how it's not subject to chiever strictures on what an enforceable contract must include. Interestingly, the document, the one page bullet point document they seek to have construed as a shareholder agreement says nothing about shares, says nothing about the corporate management of M&T, says nothing about what our case law has taught that shareholders agreements must provide for, which is what happens to the shares if one shareholder wants to sell, if one shareholder was to become deceased, if one shareholder wanted those shares to go to a family member and so forth. So to try to call this a shareholder agreement, it doesn't help them in the first instance. And secondly, there's no support for that conclusion based on this document. Finally, the final argument that my opponent makes is kind of a combination of trying to convert this to a UCC sale of goods contract and or a fiduciary duty contract. Once again, same problem, none of that analysis remedies the defects that chiever teaches this document has. Secondly, the UCC argument fails because to the extent this could be called a sale of goods and it's motor vehicles. So it's our position, UCC doesn't apply to these titled motor vehicles in the first instance. But secondly, our courts look to the predominant test of whether it's predominantly services or items that the purported contract covers. It's clear that this business plan document talks about responsibilities of each of the individuals relative to the operation of MNT. Secondly, the fiduciary duty argument fails because again, there's no support. There's no cases in our jurisprudence that says, as the result of a purported fiduciary duty, the non to act affirmatively and supply items for purchase to the moving shareholder. And again, that analysis is so attenuated that it can't possibly save the business plan which is not enforceable and cannot constitute the basis for a clearly ascertainable right. So you're saying so you're saying Mr. Rowden, that it's not a fair question, right? As to that animal, right? That's correct, Justice Holdren. Because the business plan cannot constitute an enforceable obligation to provide trucks for sale. There is no fair question of whether or not Mr. Christiani could prevail and therefore would be entitled to a mandatory injunction, which of course is highly disfavored in our jurisprudence. So that is correct, Justice Holdren. The second part of our, excuse me, the second part of our appeal deals with the denial of the motion to appoint a receiver. And the appeal focuses on a very narrow aspect of that applying the wrong standard to the motion. Now there's, my opponent takes great pains to talk about this as an abusive discretion standard, and therefore this court must look at it under that context. What we've said is we don't disagree that when a trial court applies the factors that that are applicable in deciding a receiver motion, that ruling is subject to an abusive discretion standard by an appellate in reviewing court. But that's not the issue here. The issue here is the trial court applied the common law receivership standard, which has this focus on the effect on the corporation, the effect on the company. And indeed, you know, we've cited it in our brief in preparing for this argument. I counted like five or six different references by the trial court as to what that standard meant. And the trial court said that the facts, the predicate facts that we allege must make it, quote, impossible for the business to continue or to preserve its assets. That the trial court said the current operating status is the fact which is driving this court's decision as it relates to the necessity of a receiver. This demonstrates the danger of applying the wrong standard, because of course we did not move under the common law. The Business Corporation Act, specifically section 12.56, provides one of what we cited three separate elements or items of the statute that permit the appointment of a receiver. And that is set forth in our brief 12.5682, 12.5683, 12.56D4. What those all have in common is the analysis occurs from the perspective of the aggrieved shareholder. And that's a significant difference. If you're analyzing this situation from the company's perspective, as was established at the evidentiary hearing, this company, according to its accountant and Mr. Crescione, is doing swimmingly. In 2021, it had its best year ever. It had millions, millions of dollars in profits. But you see, that's the very oppression that the evidentiary hearing established. Because with those millions of dollars of profits come millions of dollars of tax liability to the shareholders, which are 50% Mr. Crescione, 50% Mr. Sturbys. And what did Mr. Crescione do? He distributed all the money that he needed to himself to pay his taxes, but withheld hundreds of thousands of dollars for Mr. Sturbys to pay his taxes. That has to be, by definition, oppressive conduct. And it's because of the success of the company that the oppression is further demonstrated. Imagine incurring hundreds of thousands of dollars in tax liability and not having the wherewithal to pay the taxing authorities, the good old IRS and Department of Revenue of the state of Illinois, for those taxes. That's an untenable position to be in. And that is exactly what the unrefuted evidence indicates Mr. Crescione put Mr. Sturbys in. And if you analyze the receiver request under the wrong standard, you give too much weight to the effect on the corporation. And you ignore that it's the very success of the corporation, the attendant tax liabilities, and the refusal of the controlling 50% shareholder to make the same distributions to his 50% partner as he did to himself, which causes the oppression. That cannot be the appropriate analysis. Case law teaches us it is not the appropriate analysis. Indeed, many of the cases cited by my counterpart talk about the difference between analyzing under BCA and under common law, and that common law does have an understandable focus of the effect on the corporation as contrasted with the effect on the shareholder. For those reasons, and the reasons I'll cite in my rebuttal, we respectfully request that the trial courts, uh, denial of the receiver motion and grant of the preliminary motion be reversed. Thank you, your honors. Thank you, Mr. Robin. You will have time in reply. Uh, Mr. Levin, you may respond. Good afternoon. May it please the court. In granting the request for a preliminary injunction, the trial court made clear after a five-day evidentiary hearing and quite a few witnesses that it was simply returning the parties to the status quo that had existed up until April of 2021, when these two partners in a trucking business ultimately had a supply of trucks that were being sent over from Mr. Sturbey's to my client, Mr. Cresciano. The court simply said that was the status quo. It was made clear by all of the evidence. And she even found that Mr. Sturbey's was not credible when he tried to come up with a variety of excuses as to why he had suddenly stopped supplying those trucks. And, and what the court additionally heard is that at the same time, he was setting up a competing business two blocks away, another trucking business. And ultimately all of that was before the court. Was that business engaged in the same, uh, same type of business? Exactly, Judge. The very same trucking sales business, United Truck was theirs. Ours is called M&T, which he owns 50-50. So ultimately he did what I would consider the cardinal sin, competing against your own partner after you've set up a business with him. And he used trucks that he had ultimately had was making available to the business for himself to sell. And what the was that when she asked, when the questions were asked, why did you stop supplying those trucks? Ultimately said, well, this was, this one was for a friend of a friend and he came up with a series of excuses. And the judge was very pointed. The trial court was very pointed in its opinion on that issue. So all the court said was, I'm going to put you back to the status quo prior to April 2021, when all these trucks were flowing. And it was also part of an agreement that the two of you signed. And now one of you is trying to avoid the agreement with the arguments that council has posited to this court. And the judge rejected those arguments very clearly. Ultimately, there was a signed agreement between two shareholders in a closely held corporation. They were partners. They went into the business together. They said, here's what you're going to do. Here's what I'm going to do. There are provisions in the Illinois Business Corporation Act that a shareholder agreement doesn't have to be a specific style or form as council suggested. These were two men who ultimately put together an agreement and they said, this is what we're going to do. But more than that, that's exactly what they did for years until April, when he shut him down and was secretly planning to compete against his partner in the very same business. And ultimately, the preliminary injunction here was not just stopping the supply and joining him from withholding trucks, but it also really enjoined him from competing against his partner, who he had started a business with. So that the fair question that the judge, that the trial court found was the ascertainable right that these two had made an agreement that there was very clear course of conduct in terms of supplying inventory for M&T, the business that they own 50-50. And she said, I am going to put us back to where we were until a final hearing can be adjudicated on the merits. The idea that there's an application of the wrong standard under the Business Corporation Act for this just isn't true from the case law that we presented you in our brief. And I think they've tried to craft a de novo standard when in fact, all of the cases, Witters v. Hicks, Aries, and other cases we've cited, clearly show that it's within the sound discretion of the trial court to make that decision. And unless that decision were one that was against all of the evidence in the case that she heard and the witnesses she had the opportunity to observe, ultimately, that would be the only way not to ultimately find that the preliminary injunction was improperly entered. The whole analysis that this is a contract, and I'm going to point you to the Cheever's case or other cases, which didn't involve two partners. It didn't involve two shareholders. It involved two different parties who were ultimately contracting to supply goods or whatever the subject matter of contract was. These were two partners in a closely held company who had fiduciary duties to each other. And one decided to compete against the other. And that ultimately was the nub of what the judge did. And she made very clear that what was happening here was there was immediate problems, irreparable harm, the loss of customers, and with the continued inability of my client, working as the president of M&T, to fulfill orders and service customers that he had promised trucks to, destroyed the goodwill and the reputation of the business, and ultimately put us in a position or M&T in a position or my partner, Mr. Cuscione, in a position to deny the salespeople commissions they were due, or to otherwise disrupt the business in a terribly unreasonable way. So this is what they signed. They both signed a judge. His client is trying to avoid it. And he's trying to give you a number of ways that he can go outside of what he signed and what he agreed to do. And ultimately, the preliminary injunction hearing, the preliminary injunction order, excuse me, was entered within the sound discretion of the court. With respect to the receiver motion, judge, excuse me, justices, that motion is ultimately an attempt, at least in terms of this appeal, again, to sort of separate the Illinois Business Corporation Act, and in my opinion, does not follow the well settled law in Illinois, when it comes to appointing an interim receiver versus a liquidating or permanent receiver, which is part of his ultimate relief that he's thinking in the case that would be adjudicated at one point in time. The Business Corporation Act section 12.60 is very clear as to the appointment of an interim receiver. And it provides that, I'm sorry, let me just get my 12.50, 612.60 may issue or appoint an interim receiver or take such other actions as is necessary or desirable to preserve the corporate assets and carry on the business of the corporation until a full hearing can be had. So again, judge, in the cases, your honors, in the cases that we've cited, you will see situations where a court is being requested to appoint an interim receiver, you must harmonize 12.60 and 12.56, if those are the points in which they're saying misconduct occurred, to determine before you actually turn over the control of a company to someone other than the people who are operating it. And I think it's important to note that there was undisputed testimony here and the judge below, the court below, she specifically mentioned Ben Lyons. And Mr. Lyons is the outside accountant for a national accounting firm that oversaw the books and records and the accounts and tax returns of the business. The business was in the best shape it had ever been. There were no assets missing or otherwise in danger of being diverted. The company was profitable and had a significant amount of equity. What the appellant is saying here is, I was mistreated, judge. I want you to turn the company over to somebody else, even though it's been a successfully run, because I think my partner hasn't acted perfectly or he's those allegations were considered a misconduct over a five-day period with all of those witnesses testifying. And in each and every case, each and every point that they made, evidence was presented to say it's not accurate. And the judge certainly had the ability to take in that evidence, in that record, to determine whether or not any of that rose to the level of even a limited receiver of some kind. And she said, no, she determined in her sound discretion, which is clearly what the case law says is in fact, the rule for, or the standard of review and the standard by which the judge had to act, that ultimately she made the decision. The company was being well-run its assets weren't in danger. There was no imminent threat and the cases under 1260 and 1256 bring that concept in along with the other concepts of 1256. They have to be harmonized as part of reviewing any of these cases. So in short, your honor, I, the, the, the judge in this case below was very careful with the record and the witnesses and her decision, which is significant in terms of denying the appointment of the receiver and saying, let's go to a full hearing on the rest of the merits of what claims are in the case. And at that point, we will adjudicate all further issues. I thank you for my time today. Thank you counsel, Mr. Rowden, you may reply. Thank you, your honor. It's interesting what I didn't hear my opponent do. And what I didn't hear my opponent do is distinguished Cheever. I didn't hear my opponent describe how the business plan is somehow immune from well-settled Illinois Supreme court and in on down through our appellate court authority that provides when a written document misses essential terms, it's not enforceable. I didn't hear anything about how this one page document is immune to that analysis because it's not immune to that analysis. And as I referenced in my earlier argument, they try to call it a shareholder agreement, a UCC agreement. None of that matters in terms of what's required for an enforceable contract. Make no mistake, your honors, the trial court said the business plan is enforceable. It makes Mr. Sturbys and GTS have to supply trucks to M and T and it's that document that does it. So let's set aside for a moment, the fiduciary duty argument. The court said that document means he has to supply trucks. And we say, okay, what's the price of those trucks? Let's look at the document. There's isn't anything remotely approaching a price for these trucks in this document. Therefore, by definition, it cannot be enforceable. So my opponent needs to have something other than this document to rest on establishing a clearly ascertainable right. Because if there's no clearly ascertainable right, we never get to the fair question and analysis. And there is no clearly ascertainable right if this is an enforceable piece of paper, which our case authority and an analysis of this document tells us it is. Now, the fact that somebody's a bad person for doing this, that, or the other thing, that doesn't come into the analysis of whether there's an obligation to supply trucks. And there isn't under this document and under controlling authority. The next point my colleague makes is, well, under fiduciary duty, he can't compete. Okay, so I think I hear my opponent saying there's two different components of this injunction. One is you have to affirmatively supply trucks. And the other is you can't compete under fiduciary duty prohibitions. Well, fiduciary duty prohibitions, I've never seen a case that says you have to supply products at undetermined prices under your fiduciary duty. So it can only be that you can't compete. And they haven't defined that and they haven't defined how any of that would be related to the business plan as an enforceable document. So I submit they haven't and cannot establish an appropriate basis for the clearly ascertainable right. Very, very briefly on the receiver, because this is not nuance. This is not nuance. This is the problem with the trial court's analysis. She used the wrong standard. Here's the trial court's words, not mine. The appointment and this is document SR 1310, the ruling of the court at page five and six and quote, the court said, quote, the appointment of a receiver is appropriate only in cases of urgent necessity where there is a present danger to the interests of the investors consisting of a serious suspension of the business and an imminent danger of dissipation of the corporate assets. That is not the law in Illinois. That is a common law receiver standard and analysis. The business corporation act, specifically the sections I cited earlier, and my opponent didn't refute them because I'm quoting the statute accurately, does not state that unless you show eminent danger of dissipation of corporate assets, you cannot get an interim receiver. It says, if you establish one of the three items that I discussed, including oppression to the moving shareholder, a receiver may be appropriate. Therefore, we respectfully request that this court remand the receiver motion back to the trial court to apply the appropriate standard. And we respectfully request that this court reverse and vacate the mandatory preliminary injunction. Thank you, your honors for your time this afternoon. Well, thank you. Are there any questions from the court? Yes. Okay. Well, thank you, counsel, both for your arguments in this matter. This afternoon, it will be taken under advisement, a written disposition will issue. At this time, the clerk of our court will escort you out of the remote courtroom.